(176 P.3d 997)
No. 97,449

STATE OF KANSAS, *Appellee*, v. ROOSEVELT SMITH, III, *Appellant*.

Opinion filed February 22, 2008.

*Lydia Krebs*, of Kansas Appellate Defender Office, for appellant.

*Richard E. James*, county attorney, and *Paul J. Morrison*, attorney general, for appellee.

Before GREENE, P.J., MCANANY and BUSER, JJ.

MCANANY, J.: Roosevelt Smith, III, appeals his conviction of aggravated battery. The charge against Smith arose from events during the early morning hours of June 27, 2005. A short time earlier, the drug and hormone induced revelry at a party at the home of Wendolyn Barnum ended with the abrupt departure of Amber Ratzlaff through a bedroom window. The police were called to sort things out. After the police did so, Ratzlaff went home and asked Smith to accompany her back to Barnum's house to deal with some unresolved issues. When no one responded to their knocks on Barnum's door, Ratzlaff and Smith left.

After delivering Ratzlaff to her home, Smith met his girlfriend, Karen Casey, and the two of them returned to Ratzlaff's home. Witnesses only recall seeing Smith's van at the scene. Smith and Casey walked up the stairs to the front porch of Barnum's home. At this point, the narrative diverges into two distinct lines.

Smith claims that when he and Casey knocked on Barnum's door, a woman answered. Smith and Casey were instructed to leave. As they retreated from the porch, the semi-attired Barnum ran out of the front door brandishing two knives. She chased Smith and then chased Casey back into her van. (Smith claims that he

and Casey arrived in separate vans.) Barnum thrusted the knives through the open driver's side window of Casey's van. Casey escaped in the van. At that point, Barnum redirected her attention to Smith. As Barnum approached, Smith claimed he picked up a cement clod, threw it at Barnum, and ran to catch up with Casey's van. After calling 911, Smith and Casey got into his van in order to leave since Casey was too shaken up to drive her van. They returned to Barnum's house to talk with police.

Barnum's version of the events was quite different. She and her roommate, Shelly Swaimston, testified that they heard someone knocking at the door around 1 or 2 a.m. When Barnum opened the door, Smith hit her in the shoulder with a brick causing her to fall to her knees. Barnum thought she saw a gun in Smith's hand, and Swaimston heard Casey repeatedly say, " 'cap her ass.' "

The police did not find the cement clod Smith claimed he threw. However, they did observe a brick on the porch which had broken into smaller pieces. Similar loose bricks were discovered at Smith's home. Later, at trial, a masonry expert opined that this type of brick was commonly used in the 1930's and was no longer made today.

When the police interviewed Casey at the scene, she showed them where Barnum attacked the van with knives, referring to Smith's van and making no mention of her own van. When the police examined Smith's van for scratches, Casey did not suggest that they were examining the wrong van.

Smith was charged with aggravated battery. His case resulted in a mistrial due to a hung jury. On retrial, Casey testified that there were scratches from Barnum's knives on the driver's door of her van. However, witness Emily Taft, who bought Casey's van after the altercation, saw no scratches on the driver's door.

The court instructed the jury on aggravated battery and self-defense. No lesser included offense instruction was requested or given. The jury found Smith guilty of aggravated battery.

Smith moved for a new trial based on newly discovered evidence. He proffered testimony from McKenna Porter, a friend of Casey, who claimed to have overheard Taft tell Casey during the jury's deliberations that there was a scratch on the van, but it was not

very big. Taft denied to the police that she made any such statement. Further, Porter did not overhear any statement regarding where on the van the small scratch was located. The district court denied the motion, concluding that evidence of the existence of scratches on the van was not new; impeachment testimony is generally not a sufficient reason to grant a new trial; and in view of the extensive trial testimony regarding the existence or nonexistence of scratches on the van, none of which could be seen in the photo exhibits of the van, it was unlikely that one more piece of evidence regarding a small scratch somewhere on the van would have changed the result of the trial.

Smith appeals.

*Error to Deny Motion for New Trial?*

K.S.A. 22-3501 permits the court to grant a new trial if it is in the interest of justice to do so. We examine the district court's ruling to determine if the court abused its discretion in denying the motion. *State v. Harris*, 279 Kan. 163, 105 P.3d 1258 (2005).

Granting a new trial due to newly discovered evidence is not favored, and a motion to do so should be viewed with caution. *State v. McKinney*, 272 Kan. 331, 338, 33 P.3d 234 (2001). To prevail, Smith must first show that this new evidence could not have been produced at trial with reasonable diligence. Since the evidence did not come into existence until after the jury commenced its deliberations, this element is easily met. Second, Smith must also show that there is a reasonable probability that his newly discovered evidence would produce a more favorable result upon retrial. *Harris*, 279 Kan. at 176. We turn our attention to this second element.

There is no showing that this new evidence was relevant. Relevant evidence is evidence which tends to prove a material fact. *State v. Gunby*, 282 Kan. 39, 47, 144 P.3d 647 (2006). The particular sub-issue in controversy was whether Barnum attacked Casey in her van with knives. The new evidence proffered by Smith does not suggest that Taft observed scratches on the van near the window on the driver's door. The fact that there may be a scratch somewhere on a 1995 Plymouth Voyager van which Taft purchased from Casey after this 2005 incident does not tend to prove an issue

in controversy. A new trial is not warranted merely to impeach Taft on the issue of whether there was a scratch somewhere on the van. See *State v. Reed*, 256 Kan. 547, 560, 886 P.2d 854 (1994).

Smith's reliance on *State v. Norton*, 277 Kan. 432, 85 P.3d 686 (2004), is misplaced. Norton's drug conviction was based solely on the testimony of a confidential informant, regarding whom new impeachment evidence was discovered. In *Norton* the court observed that the presence or absence of corroborating evidence is a factor in determining whether the newly discovered evidence is likely to produce a different result on retrial. 277 Kan. at 441. Here, evidence from several witnesses supported Barnum's version of the events, the version adopted by the jury. Swaimston, Barnum's roommate, observed the attack on the front porch. The police found the brick on the front porch. The brick was of the kind found at Smith's home. No cement clod was found to support Smith's version of the events. Casey claimed Barnum attacked her in her van before going after Smith. No independent witnesses verified seeing Casey's van at the scene. Casey did not mention her van to the police. The pictures of her van do not show the scratches she claims.

Under these circumstances, a retrial was not warranted simply to add one piece of disputed evidence of dubious value with which to impeach Taft. The district court did not abuse its discretion in denying Smith's motion for a new trial based upon newly discovered evidence.

### Lesser-Included Instruction

Smith contends the district court should have instructed the jury on battery as a lesser included offense of aggravated battery, though no such instruction was requested. Under these circumstances we apply the clearly erroneous standard and will reverse the conviction if it was error not to give the instruction and we are firmly convinced that there is a real possibility the jury would have rendered a verdict more favorable to the defendant had the proper instruction been given. See *State v. Trotter*, 280 Kan. 800, 805, 127 P.3d 972 (2006); *State v. Engelhardt*, 280 Kan. 113, 134, 119 P.3d 1148 (2005).

Smith had the right to an instruction on all lesser included offenses if (1) the evidence, viewed in the light most favoring him, would justify a jury verdict in accordance with this theory, and (2) the evidence does not exclude guilt on the lesser offense. See *State v. Dixon*, 279 Kan. 563, 112 P.3d 883 (2005); *State v. Williams*, 268 Kan. 1, 15, 988 P.2d 722 (1999).

The difference between battery and aggravated battery is the inclusion in the latter crime of the additional element that the act is performed "with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted." See K.S.A. 21-3412(a)(2) and K.S.A. 21-3414 (a)(1)(C).

Smith does not deny striking Barnum. Rather, he claims he acted out of fear for his personal safety. Smith testified he was trying to escape from Barnum when "I kind of stumbled, went down somewhat. There was a cement clod or something. Uh, I don't know exactly how I did it, but when I went down, I grabbed, turned, threw it, and kept going all in one motion." He provides no further testimony regarding the manner or force of his actions. That testimony was supplied by Barnum.

The question is whether the jury, considering the testimony as a whole, would have been justified in rendering a verdict of guilty based upon a charge of simple battery; that is, whether the jury could have found that Smith did not strike Barnum in a "manner whereby great bodily harm, disfigurement or death can be inflicted."

"Great bodily harm" has often been defined as more than "slight, trivial, minor, or moderate harm, and does not include mere bruising, which is likely to be sustained by simple battery." *Moore*, 271 Kan. at 419 (citing *State v. Dubish*, 234 Kan. 708, 715, 675 P.2d 877 [1984]; *State v. Sanders*, 223 Kan. 550, 552, 575 P.2d 533 [1978]).

The testimony bearing on this issue came from Barnum and Swaimston. Barnum testified that when she opened the door where Smith and Casey were standing, Casey stepped aside and Smith "was right there on me." Smith had a brick in his hand. "He didn't throw it. He had it in his hand and went to hit me. Had I not turned, he would have hit me in my face." Smith struck Barnum

on her shoulder "very hard." Barnum immediately fell to her knees. She thought her arm was broken since it was limp and numb. In fact, the blow dislocated her shoulder.

Swaimston testified she went with Barnum to answer the door. When Barnum opened the door, Smith struck Barnum with an object which caused Barnum to fall to her knees. Swaimston helped her up. Barnum "was in a daze."

The evidence was controverted as to where and with what object Smith struck Barnum. The evidence was controverted as to whether Smith acted in self-defense or whether he was the aggressor. If the jurors believed Smith fell to the ground as he attempted to elude Barnum and threw a cement clod in an effort to ward her off, they could have acquitted him. They did not believe Smith. Having rejected Smith's version of the events, what evidence did the jurors have to consider? Only the descriptions by Barnum and her roommate. It was the task of the district court to consider the evidence as a whole to determine if the jury should be instructed on simple battery. If the evidence was that Barnum's injury was neither slight, trivial, moderate, nor minor, the district court was not required to give an instruction on simple battery. See *State v. Brice*, 276 Kan. 758, 575, 80 P.3d 1113 (2003). Here, the evidence was that Smith struck Barnum with a brick with sufficient force to separate her shoulder. Given uncontradicted testimony regarding the force of the blow and the seriousness of its consequences to Barnum, the district court did not err in failing to instruct the jury *sua sponte* on the lesser included offense of simple battery.

Affirmed.