NOT DESIGNATED FOR PUBLICATION

No. 115,063

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

BRAD JOSEPH JONES,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; SARA WELCH, judge. Opinion filed February 10, 2017. Affirmed.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., MCANANY and BUSER, JJ.

*Per Curiam*:  Brad Joseph Jones appeals from the district court's denial of his K.S.A. 60-1507 motion seeking a new trial due to newly discovered evidence relating to his conviction for felony murder. We find no error in the district court's rulings and affirm.

*Facts*

The events leading to Jones' conviction began to unfold when Ruth Peck was placing in the trunk of her car items she had just purchased at a Target store. Just as Peck finished, Jones approached, grabbed Peck's purse, and took off running. Peck yelled for

help, and Jonathan U responded. U chased Jones who ran to his car and jumped in. U reached into Jones' car and tried to retrieve Peck's purse, but Jones sped off with U still partially in the car. Jones' car then struck a brick wall and crushed U between the car and the wall. U was rushed to the hospital where he died 18 days later.

The State charged Jones with felony murder, felony theft, felony fleeing and eluding, and two counts of robbery. Before trial, Jones pled guilty to all counts except felony murder and proceeded to a jury trial on this remaining charge.

At trial, the prosecution argued that U's death was caused by complications from the injuries he sustained as a direct and proximate result of Jones fleeing the robbery scene and striking the brick wall, making Jones guilty of the felony murder. Jones' theory was that U's death was caused not by Jones' conduct but by the intervening malpractice of the doctors who treated him at the hospital.

In support of this theory, Jones sought to introduce evidence that U's wife consulted with a lawyer regarding a possible medical malpractice suit. The district court refused to admit this evidence on the grounds that to do so would invade the attorney-client privilege. The court limited Jones' evidence to medical evidence rather than evidence of a contemplated malpractice suit.

In that regard, there was evidence that U underwent three surgeries, among other treatments and tests. Dr. Michael Handler testified about the autopsy he performed on U's body. Dr. Steven Behrends, the surgeon who acted as U's primary care physician during U's hospitalization, also testified about U's course of treatment.

Jones presented the testimony of Dr. James Bryant, a pathologist who reviewed U's medical records and opined that the proximate cause of U's death was

2

pseudomembranous colitis caused by medical malpractice and not by the crush injuries sustained when Jones' car hit the wall.

Dr. Frank Mitchell, III, a general surgeon and acting director of the trauma unit at St. Luke's Hospital in Kansas City, testified in rebuttal. He opined that U received proper medical care for the massive injuries U suffered when Jones fled from the robbery.

The jury ultimately found Jones guilty of first-degree felony murder. At his sentencing in May 2006, the district court imposed a life sentence plus 176 months.

In his direct appeal to the Kansas Supreme Court, Jones asserted for the first time that he was entitled to a new trial based on newly discovered evidence that U's widow filed a civil suit against the treating physicians and the hospital. (At the time of trial, U's widow apparently had only consulted a lawyer about a malpractice suit but no suit had actually been filed.) The Kansas Supreme Court, in affirming Jones' convictions and sentence, declined to consider this claimed new evidence because it had not been properly raised before the district court. *State v. Jones*, 287 Kan. 547, 555-56, 198 P.3d 756 (2008).

In May 2014, Jones filed an untimely K.S.A. 60-1507 motion, asking the court to order a new trial because of newly discovered evidence that U's family had settled the malpractice suit they brought against U's treating physicians and the hospital. Jones asserted that the district court should consider his untimely motion in order to prevent manifest injustice because this newly discovered evidence would prove his actual innocence and his trial and appellate counsel had been ineffective in failing to raise this issue at trial and on his direct appeal.

In January 2015, the district court held an evidentiary hearing to determine whether extending K.S.A. 60-1507(f)'s 1-year time limitation for a K.S.A. 60-1507

motion was necessary to prevent manifest injustice. Jones testified that he asked his trial counsel to file a K.S.A. 60-1507 motion on his behalf. Jones' trial counsel testified that after the Kansas Supreme Court's decision he filed a federal habeas corpus action but not a K.S.A. 60-1507 motion. He conceded Jones' family talked to him about filing a Kansas petition.

The district court held that Jones had asked his trial counsel to file a K.S.A. 60-1507 motion, but counsel failed to do so. Under the circumstances, the district court permitted Jones to proceed on his motion in order to prevent manifest injustice. The district court rejected Jones' claim of actual innocence.

The district court then presided over a preliminary nonevidentiary hearing on whether Jones' claim, now considered timely filed, should go forward with a full evidentiary hearing. Jones' K.S.A. 60-1507 counsel recognized that a settlement agreement typically is not admissible at trial, and the district court noted that the settlement agreement was sealed and, by court order, could be released to the named parties only. But Jones' counsel argued that admitting the settlement agreement supported the defense that he did not cause U's death, and the document "could call into question the credibility of the victim's wife."

The district court rejected Jones' arguments and denied a full evidentiary hearing on his K.S.A. 60-1507 motion, concluding that the settlement agreement was under seal and whether it was exculpatory was "speculative at best." Further, the settlement agreement was inadmissible under K.S.A. 60-452, and even if admitted into evidence at a retrial, it would not change the outcome of the case.

*Admission of the Settlement Agreement*

Jones' appeal brings the matter before us. His central issue is the district court's ruling that admission of the settlement agreement would not have likely produced a different result at a retrial. Because the district court came to this conclusion without having heard any testimony or reviewing the settlement agreement itself but solely by reviewing the motion, the court file, and records in the case, we are in as good a position as the district court to review the matter. So our review is de novo. *Grossman v. State*, 300 Kan. 1058, 1061, 337 P.3d 687 (2014).

As a preliminary matter, and contrary to the State's contention, we conclude that as part of his argument Jones can assert the claim that the district court should have examined the settlement agreement before deciding the matter. In his appellate brief, Jones cites the relevant Kansas statutes pertaining to admissibility of settlement agreements. Although Jones' appellate brief is certainly sparse on authority, it appears sufficient to address his claim. Therefore, Jones has not waived or abandoned his argument for failure to properly raise and brief it.

In deciding whether to grant a new trial because of newly discovered evidence, the court must determine (1) whether the defendant has met the burden of establishing that the claimed new evidence could not, with reasonable diligence, have been produced at trial, and (2) whether the evidence is of such materiality that it would be likely to produce a different result on retrial. *State v. Fulton*, 292 Kan. 642, 649, 256 P.3d 838 (2011).

With respect to the first element, the settlement agreement was not entered into until after Jones' trial, so he could not have produced it at trial. See *State v. Smith*, 39 Kan. App. 2d 64, 67, 176 P.3d 997, *rev. denied* 286 Kan. 1185 (2008).

With respect to the second element, in determining whether newly proffered evidence is material, ordinarily a new trial is not warranted when the newly proffered evidence merely tends to impeach or discredit the testimony of a witness. *State v. Ayadi*, 16 Kan. App. 2d 596, 601-02, 830 P.2d 1210, *rev. denied* 250 Kan. 806 (1991). As to whether the settlement agreement is material to determining the cause of U's death, we turn first to our Supreme Court's discussion of proximate cause in *State v. Rueckert*, 221 Kan. 727, 737, 561 P.2d 850 (1977), cited with approval in *State v. Mays*, 277 Kan. 359, 378, 85 P.3d 1208 (2004):

> "'Where a person inflicts upon another a wound which is calculated to endanger or to destroy life, it is not a defense to a charge of homicide that the alleged victim's death was contributed to or caused by the negligence of the attending physicians or surgeons. The concept of intervening cause in both tort and criminal law is predicated upon foreseeability. Since human beings are not infallible, some degree of a doctor's negligence is foreseeable and cannot be used by a defendant to exonerate himself. Neither can a defendant use as a defense the possibility that different or more skillful treatment might have saved the life of the deceased, and thereby avoid the consequences of his attack. Defendant must show that erroneous or unskilled medical care became the efficient intervening cause of death and superseded the effect of the wounds inflicted by defendant so as to become the proximate cause of death. These are all jury questions. [Citations omitted.]'"

Whether Jones' conduct was the proximate cause of U's death or whether intervening medical malpractice was the cause was the focus of Jones' trial. The jury heard expert testimony on both sides of the issue and decided that Jones was the proximate cause of U's death. In doing so the jury considered and rejected the opinions expressed by Jones' expert, Dr. James Bryant, that the proximate cause of U's death was pseudomembranous colitis that resulted from the malpractice of U's treating doctors.

Further, the fact of settlement of a civil malpractice claim does not establish that there was an intervening cause of U's death, as opposed to the conduct of Jones in

6

crushing U between Jones' car and the brick wall being the proximate cause of U's death. In this panel's collective experienced of over 100 years as lawyers or judges engaged in civil litigation, we have never seen a settlement agreement in a civil suit that was explicitly designed to achieve anything other than the resolution of a doubtful and disputed claim without an admission of any liability whatsoever. We are satisfied that admitting into evidence the settlement of U's widow's claim against U's treating physicians would not have changed the outcome of Jones' trial.

And as to whether introduction of the settlement agreement would have impeached the testimony of U's widow, Jones fails to explain why the rule recited above in *Ayadi* would not control.

Based on the foregoing, the settlement agreement was not of such materiality that it would be likely to produce a different result on retrial. The district court did no err in so concluding.

With this, we need not consider the district court's alternative conclusion that the settlement agreement would not have been admissible at a retrial of Jones' case.

*Claimed Ineffective Assistance of Counsel*

For his next point of error, Jones contends that the district court failed to address his claim of ineffective trial and appellate counsel. He asks us to remand this claim for the district court to consider the matter and make findings as required by Supreme Court Rule 183(j) (2015 Kan. Ct. R. Annot. 271).

Because our review of this matter is de novo, there is no need to remand the matter to the district court. We can resolve the issue ourselves.

7

First, it is obvious that trial counsel was not ineffective for failing to address a settlement agreement that had not come into existence by the time of Jones' trial. Further, appellate counsel could not be ineffective for failing to raise the issue of the settlement agreement on appeal when there was nothing in the record about it.

Second, Jones claims his trial counsel was ineffective in failing to file a timely K.S.A. 60-1507 motion on his behalf. But that issue was addressed by the district court when it permitted Jones' motion to go forward in order to prevent manifest injustice arising from trial counsel having failed to file a timely motion. Jones has already received relief on this claim

For his final issue, Jones contends that the district court erred in summarily denying his actual innocence claim. He argues that because there was an intervening cause of U's death, he was actually innocent of the crime of felony murder. Aside from the paucity of argument or authority on this issue, Jones made the claim of actual innocence in order to convince the court to permit him to proceed on his K.S.A. 60-1507 motion notwithstanding the fact that it was not timely filed. The district court permitted Jones to proceed on his motion notwithstanding his tardiness, so Jones achieved the objective in raising the issue of actual innocence. Thus, this issue is now moot.

Affirmed.