NOT DESIGNATED FOR PUBLICATION

No. 121,574

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JERRY A. ANDERSON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed August 27, 2021. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Kimberly A. Rodebaugh*, senior assistant district attorney, *Thomas Stanton*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., MALONE, J., and BURGESS, S.J.

PER CURIAM: Jerry A. Anderson's case has been before this court twice on interlocutory appeals. The State was unsuccessful on both appeals, and the matter went to a jury trial on the 188th day of the speedy trial clock, according to the way Anderson counted the days. Anderson now appeals his jury trial conviction for aggravated robbery, claiming: (1) The district court erred in denying his motion to arrest judgment because his statutory right to a speedy trial was violated; (2) the district court abused its discretion in denying his motion for a new trial in light of new evidence; and (3) the district court erred in finding the State did not commit a violation under *Brady v. Maryland*, 373 U.S.

1

83, 83 S. Ct. 1194, 10 L. Ed. 2d. 215 (1963), by failing to turn over exculpatory evidence. Upon review of the complete record, we find no error. We affirm.

FACTS

On May 4, 2015, Kimberly Frank, a Loan Max Title Loans employee in Hutchinson, was robbed at gun point. Around noon, a Black man walked into the Loan Max store, opened the door to go behind the front counter, and told Frank to put her hands up and give him the money. Frank opened the cash drawer and put the money on the counter. The man grabbed the money and walked out of the store. Frank called 911 as soon as the man left.

Several days after the robbery, Hutchinson Police Detective Jamie Schoenhoff and Hutchinson Police Sergeant Tyson Meyers went to Frank's house and asked her to identify the robber in a photo line-up. The officers provided Frank with eight photographs. Frank was unable to conclusively determine who the robber was but narrowed the line-up to two individuals, one of which was Anderson. On May 7, 2015, Meyers arrested Anderson in connection with the Loan Max robbery. The State charged Anderson with aggravated robbery.

At the preliminary hearing, Frank testified she was 100 percent certain the defendant—the only Black male in the courtroom and the only person in custody at counsel table—was the robber. Meyers testified at the preliminary hearing that police officers searched Anderson's residence with the authority of his parole officer. At arraignment, Anderson pled not guilty.

Anderson filed a pretrial motion to suppress evidence. Anderson requested the district court suppress evidence of Frank's pretrial identification because it was unnecessarily suggestive and violated his due process rights. Anderson also requested

2

suppression of evidence obtained from a warrantless search of his house two days after the robbery.

The district court conducted a three-day bifurcated suppression hearing. After the hearing, the district court denied Anderson's motion to suppress Frank's eyewitness identification evidence but sustained his motion to suppress evidence seized from the warrantless search of his home. The State filed an interlocutory appeal regarding the district court's ruling on the motion to suppress evidence from the warrantless search.

Another panel of this court issued a memorandum opinion, explaining the district court's findings were insufficient to permit meaningful review. *State v. Anderson*, No. 116,140, 2017 WL 1297998, at *1 (Kan. App. 2017) (unpublished opinion) (*Anderson I*). The panel remanded the case to the district court for additional findings and conclusions to determine whether the consent exception to a warrantless search applied. 2017 WL 1297998, at *3. The mandate was filed on May 16, 2017, and the district court received the mandate on May 24, 2017.

After receiving the mandate, the district court conducted a hearing on June 30, 2017, allowing both parties to present oral arguments on the issue of whether Anderson consented to a warrantless search of his residence. After hearing arguments, the district court took the matter under advisement and explained it would file a written opinion on the warrantless search issue; in the meantime, the case was stayed. Before the hearing was concluded, the State attempted to clarify the record, stating:

> "Judge, it's my understanding this case is on appeal upon us being done with this hearing and you making this decision, it goes back up to the Court of Appeals for its final determination. Is that what you understand? They indicate we can't decide this issue until the Court remands for this hearing. I think it's still on appeal. I think this is just a time-out in the appellate process.

. . . .

"I think the remand was very specific. We're going to have a hearing to make these determinations and then [the Court of Appeals] will continue with whatever they do up there."

The district court simply explained the issue of whether the case was still on appeal did not need to be decided at that time and it would have its decision out the following week.

At a status hearing on July 7, 2017, the district court granted Anderson's motion to suppress evidence obtained from the warrantless search because the State failed to prove Anderson unequivocally, specifically, and freely consented to the search. The district court explained:

"A constitutional valid search must be proven by clear and positive testimony showing it to have been unequivocal, specific and freely given. The only testimony that even remotely or tangentially related to consent was a testimony by Julie Novinger, who was the defendant's parole officer; who said and I'm quoting her statement: 'The officers had mentioned about searching the house and if he agreed to a search and he said he did.' That statement, well, for one thing is vague as far as who he is and was never explained and that is the only mention of consent. The other two officers, the detectives, Detective Schoenhoff, Detective Black did not mention consent. In fact, Detective Black specifically said, I do not know if he gave consent to search. So that is my decision and this case will proceed."

The State again attempted to clarify the procedural posture of the case.

"[THE STATE]:  Your Honor, it was remanded for that finding but it's still before the Court of Appeals. Your ruling will go back up and they remanded for this specific hearing."

"THE COURT:  That's true.

4

"[THE STATE]:  So it's still under interlocutory appeal.

"THE COURT:  That's correct."

The State filed another interlocutory appeal on July 10, 2017. On July 12, 2017, the district court issued its written order from the July 7, 2017 motion hearing, granting Anderson's motion to suppress evidence from the warrantless search of his home.

On March 2, 2018, another panel of our court affirmed the district court's ruling, granting Anderson's motion to suppress evidence from a warrantless search. *State v. Anderson*, No. 117,994, 2018 WL 1123992, at *1 (Kan. App. 2018) (unpublished opinion) (*Anderson II*). The mandate was issued on April 10, 2018. A jury trial commenced on June 4, 2018.

Given the issues on appeal we have separately set out the testimony of the various witnesses as the trial progressed.

*Kimberly Frank*

Frank testified she was working alone at Loan Max Title Loans in Hutchinson on May 4, 2015. Around noon, she was seated at the front counter when a Black man with a handgun entered the building and walked behind the front counter. The man demanded money. Frank stood up from her chair, walked backwards along the counter to the money drawer, opened it, and placed the money on the counter for the man to grab. Frank called 911 immediately after the man left and wrote a note indicating what he was wearing. Her note stated:  "Black male Blue stripped [*sic*] Blue jeans."

Frank acknowledged the entire event lasted only 27 or 28 seconds. She testified the man weighed about 195-200 pounds and his height was approximately 6'1" or 6'2".

He was wearing a blue striped shirt; thick, black-rimmed glasses; a black do-rag; and a black ball cap. She had not seen the man before the robbery and did not recognize him. Frank also testified about the photo line-up that occurred several days after the robbery and admitted the two photos she picked out contained a combination of the robber's features. She acknowledged on cross-examination photographs can look different from real life based on lighting and other factors.

*Darren Fox*

Darren Fox, a Hutchinson police officer, received a report of an armed robbery at Loan Max. Upon his arrival Frank told Fox the robber was a Black male around 25 years old and stood about 6 feet to 6'2" tall.

*Jamie Schoenhoff*

Schoenhoff was assigned to investigate the Loan Max robbery. Schoenhoff viewed video surveillance from Loan Max as well as surrounding businesses, and they revealed the robber walking at a consistent pace with a unique side-to-side walk, like a penguin, when he entered the building and went behind the front counter.

The surveillance videos also depicted the robber leaving Loan Max and entering a black four-door Saturn Ion. The vehicle was backed into an enclosed area and, while the videos do not fully depict the robber getting into the vehicle, his feet can be seen climbing into the passenger side of the car. Immediately after the robber got into the vehicle, the brake lights turned on and the car pulled away.

Schoenhoff testified he previously worked undercover in narcotics and, while performing narcotic investigations, became familiar with an individual who drove a black

6

Saturn Ion. Schoenhoff previously conducted 20-50 hours of surveillance on the Saturn Ion during his time as a narcotics officer and knew the vehicle's owner as Adina Smith.

Schoenhoff found out the utilities at Smith's house were in Anderson's name. Schoenhoff looked at pictures of Anderson and became familiar with his appearance. On May 7, 2015, Schoenhoff saw the black Saturn Ion show up at Smith's house and witnessed an unknown Black male come out of the residence. The individual appeared to be the same individual from the Loan Max robbery based on his size, skin tone, and distinctive walk.

On cross-examination, Schoenhoff admitted he never made reference to, previously testified to, or reported that the individual had a unique penguin-like walk.

*Curtis Black*

Curtis Black, a Hutchinson Police Department Detective, also investigated the Loan Max robbery. Black corroborated Schoenhoff's testimony, suggesting the getaway vehicle was a black Saturn Ion passenger car with damage on the front end, similar to a vehicle previously investigated on other matters. About three-and-a-half hours after the robbery, Black noticed the suspected vehicle pull in front of him and drive to Cox Communications.

Black also testified he was familiar with Julie Novinger, Anderson's parole officer, and showed her the video surveillance of the Loan Max robbery. Novinger was given Anderson's name prior to watching the video but she was not told the person in the video was Anderson.

*Julie Novinger*

Novinger testified Hutchinson police asked her to identify an individual from a surveillance video. Novinger believed the person in the video was Anderson because of the glasses he was wearing and because she recognized Anderson's voice and his walk. Novinger admitted Hutchinson police officers told her Anderson was a suspect prior to watching the surveillance video. Novinger also admitted she had previously testified the video surveillance she watched did not have audio and, based on still frames from the video surveillance, she could not detect whether the suspect was wearing glasses.

*Darren Truan*

Darren Truan, a Hutchinson Patrol Sergeant, testified that on May 5, 2015, the day after the robbery, he was looking for a Black male, Joshua Hayes, to arrest on a municipal court warrant. Truan arrested Hayes for his outstanding warrant, and Hayes was booked into jail, wearing white Nike shoes and a do-rag similar to the Loan Max robber. While the Loan Max robbery suspect stood about 6'1" or 6'2" tall, Hayes stood 5'8" tall and weighed approximately 210 pounds.

Truan received information Hayes had been at Smith's house on the date of the robbery counting money and that it was unusual for Hayes to have money. Hayes did not have a black hat with him, such as the one the robber was wearing, but had given an individual named Timothy Jackson a black hat. Truan contacted Jackson, who had an outstanding municipal court warrant, and arrested him. When Truan asked Jackson about Hayes, Jackson began acting strangely and stated he did not know whether Hayes gave him a hat.

Anderson's jury found him guilty of aggravated robbery. After the jury trial, but before his sentencing hearing, Anderson's trial counsel received an e-mail, which stated:

> "Hey ms. Mckinnon i been fallowing jerry's case in the newspaper. And i know for a fact he didnt rob the loan max title loan place i know who did it and i know who borrowed his car and adinas car I never came forward bc i thought if he didnt do it he will get off. Jerry wasnt anywhere near that car when the robbery took place i know where it was before and after the guy who did it was arrested that day and i was as well along with my friend jk. Joshua hays robbed the loan max title loan place not jerry. I dont wanna see him go away for something he didnt do."

Based on the contents of the e-mail, Anderson filed a motion for judgment of acquittal, a motion for a new trial, a motion to arrest judgment, and a motion for a departure sentence. Anderson's motion for a new trial alleged, among other things, newly discovered evidence that could not, with reasonable diligence, have been discovered and produced at trial. Anderson contended the author of the e-mail, Stephanie Buckley, would testify the "true robber" was arrested on another matter the same day as the Loan Max robbery, was wearing the same shirt and do-rag as the man in the Loan Max surveillance video, and had Smith's Saturn Ion at that time. Anderson's motion to arrest judgment alleged the district court lacked jurisdiction to try the case because Anderson's statutory right to a speedy trial had been violated when the jury was sworn in.

The district court conducted a hearing on Anderson's posttrial motions. With respect to Anderson's motion to arrest judgment, the district court explained:

> "[W]e had an appeal that was pending, then a mandate was issued on 5/24/17. I reviewed that mandate and the mandate specifically stated because the district court's findings are insufficient to permit our meaningful review, we remand the case for additional findings

9

and conclusions. That language requires me to conclude the appeal was in effect, still pending, until I made those findings and conclusions and the Appellate Court had the opportunity to rule on my decision."

The district court denied Anderson's motion to arrest judgment given its finding the State brought Anderson to trial within the time limits allowed.

Based on the issues raised in the motion for new trial, the district court continued those issues and instructed the State to research any additional police reports on possible investigations into Hayes, Buckley, Jackson, and Jerry Mahan, who was arrested the day after the Loan Max robbery during a traffic stop. The State filed an investigation report, noting there were no interviews conducted with Hayes, Buckley, or Jackson. The State determined Buckley had been arrested with Mahan during a traffic stop. The State's response noted: "The arrest [was] documented in HPD case [#2015-11193], and both were arrested from Smith's black colored Saturn Ion. Mahan was arrested for driving while suspended. Buckley was arrested for obstruction after lying to the police officers and providing the false name of 'Elizabeth Yates.'"

Anderson filed another motion asking the district court to reconsider its ruling denying his motion to arrest judgment. The district court at the next hearing denied Anderson's motion to reconsider and continued the sentencing hearing again to further study the issues related to Anderson's motion for a new trial based on newly discovered evidence. Anderson argued he requested any outstanding police reports involving Mahan from the State and the State willfully withheld a report involving Mahan in which he was "arrested in the black Saturn Ion vehicle which was the subject matter of this case, on May 5th." Anderson admitted he did not actually have the police report and had not seen the report at the time of this hearing. Anderson also provided the district court with a Kansas Department of Corrections (DOC) printout of Mahan. Anderson told the district

court the printout would show "that Jerry Mahan, the II, is the same height and weight as Jerry Anderson." The printout showed Mahan was 5'7" tall and weighed 204 pounds.

At the next sentencing hearing, Anderson alleged he still did not have the Hutchinson police report involving Mahan and Buckley. The district court ordered the State to provide Anderson with the Hutchinson police report before proceeding with sentencing. The State provided Anderson with the case report dated May 5, 2015, reflecting Buckley and Mahan were arrested. The case report reflected the vehicle Mahan and Buckley were stopped in was a 2002 4-door Saturn L200. Mahan told the arresting officers the vehicle was not his, but he did not say who owned the car. Mahan's arrest report showed he was a Black male, standing 5'7" tall and weighing 180 pounds.

The district court then found Anderson failed to meet his burden to establish that the new evidence was of such benefit or materiality that it would be likely to produce a different result upon retrial. The district court also determined Anderson failed to provide sufficient evidence to support the allegation the State was withholding discovery. The district court explained the State did not intentionally or negligently withhold discovery and a new trial was not warranted.

The district court denied Anderson's departure motion and sentenced him to 216 months' imprisonment with 36 months' postrelease supervision. Anderson prematurely appealed on January 14, 2019, as the case was not final until the conclusion of his restitution hearing on February 28, 2019. See *State v. Northern*, 304 Kan. 860, 862, 375 P.3d 363 (2016) ("[T]he restitution phase of sentencing must also be completed before a defendant files a notice of appeal."); *State v. Hall*, 298 Kan. 978, 988, 319 P.3d 506 (2014) ("[W]here judgment is effective once pronounced from the bench, a premature notice of appeal that seeks review of a conviction and sentencing yet to be completed lies dormant until final judgment including the entire sentence is pronounced from the bench."). A nunc pro tunc journal entry of sentencing was filed, acknowledging the

district court's denial of Anderson's judgment of acquittal and motion to reconsider Anderson's motion to arrest judgment.

ANALYSIS

I. THERE WAS NO SPEEDY TRIAL VIOLATION.

Anderson alleges 188 days passed from arraignment to trial, violating his statutory right to a speedy trial. Anderson contends the 47-day period between May 24, 2017, and July 10, 2017—the time when the district court received the mandate from the State's first interlocutory appeal to the date the State filed a second interlocutory appeal—should be charged to the State for speedy trial purposes. Anderson argues the additional 47 days resulted in a total of 188 days chargeable to the State between arraignment and trial, which entitles him to be discharged from the crime charged as a violation of his statutory right to a speedy trial.

The State argues it should not be charged the 47 days for speedy trial purposes because its first interlocutory appeal was still pending. The State explains the mandate remanded the case to the district court for additional findings and conclusions because the record on appeal was deficient and the *Anderson I* panel could not conduct a meaningful review. The State argues it should only be charged a total of 144 days for speedy trial purposes and Anderson's rights, therefore, were not violated.

"This court exercises unlimited review over a district court's legal rulings regarding violations of a defendant's statutory right to a speedy trial." *State v. Vaughn*, 288 Kan. 140, 143, 200 P.3d 446 (2009). Further, computing the number of days excluded from the statutory speedy trial calculation is a question of law, over which this court has unlimited review, as it involves statutory interpretation. 288 Kan. at 143. The burden is on the State to meet the time requirement. *State v. Queen*, 313 Kan. 12, 16, 482

12

P.3d 1117 (2021). "If the State fails to bring the defendant to trial by the deadline, the defendant is 'entitled to be discharged from further liability to be tried for the crime charged.' K.S.A. 2020 Supp. 22-3402(a)." 313 Kan. at 16.

K.S.A. 2020 Supp. 22-3402(b) states:

> "If any person charged with a crime and held to answer on an appearance bond shall not be brought to trial within 180 days after arraignment on the charge, such person shall be entitled to be discharged from further liability to be tried for the crime charged, unless the delay shall happen as a result of the application or fault of the defendant, or a continuance shall be ordered by the court under subsection (e)."

There is no dispute Anderson was held on an appearance bond, allowing the State 180 days to bring him to trial after arraignment.

*Statutory speedy trial clock tolled during interlocutory appeal*

The statutory speedy trial provisions are tolled while the State pursues an appeal. K.S.A. 2020 Supp. 22-3604(2). When an appellate court's decision becomes final, that court must promptly transmit its mandate to the clerk of the district court containing appropriate directions under the decision. K.S.A. 60-2106(c).

> "The time during which an interlocutory appeal by the prosecution is pending is not counted for the purpose of determining whether a defendant is entitled to discharge for the State's failure to provide a speedy trial. However, once the mandate is filed and received by the trial court, the time starts to run again, and any days which elapse are attributed to the State." *State v. Haney*, 34 Kan. App. 2d 840, 841-42, 125 P.3d 587 (2006).

After the district court granted Anderson's motion to suppress, the State filed its first interlocutory appeal. The *Anderson I* panel found it could not provide meaningful review because of an insufficient record below. The panel did not necessarily confirm the State failed to establish its burden on appeal. Rather, the panel explained: "[We] cannot tell why the district court did not find the consent exception, argued by the State and facially supported by evidence, applicable." *Anderson I*, 2017 WL 1297998, at *2. The panel remanded the case to the district court for it to determine whether the consent exception to a warrantless search applied. The mandate on the State's interlocutory appeal was issued on May 16, 2017. The district court received the mandate on May 24, 2017, which potentially started the time clock for speedy trial purposes.

At the remand hearing on the motion to suppress, the district court found the State failed to meet its burden to establish clear and positive testimony that the claimed consent was unequivocal, specific, and freely given without duress. The motion to suppress the evidence seized from the warrantless search of Anderson's house was granted. The State filed a second interlocutory appeal, and the *Anderson II* panel affirmed. 2018 WL 1123992, at *1.

*Time charged to the defendant*

A defendant can stop the speedy trial clock by filing a suppression motion. See *State v. Brown*, 283 Kan. 658, 663, 157 P.3d 624 (2007); *City of Dodge City v. Downing*, 257 Kan. 561, 563, 894 P.2d 206 (1995); *State v. Roman*, 240 Kan. 611, 613, 731 P.2d 1281 (1987). That is, any delay caused by a defendant's motion to suppress evidence is the result of the defendant's application, and "reasonable time taken by the parties and the court to process [such] motion . . . should be charged to the defendant." *City of Dodge City*, 257 Kan. at 563; see K.S.A. 2020 Supp. 22-3402(b). If the district court takes the issue under advisement, the speedy trial clock remains tolled for "a reasonable time (at most two or three weeks)." *Roman*, 240 Kan at 613.

14

The State argues all delays between the date the district court received the mandate—May 24, 2017—until the district court granted Anderson's motion on remand—July 7, 2017—were attributable to Anderson because his suppression motion was pending. Under the specific facts of this case, it would appear that upon remand from this court, Anderson's motion to suppress remained unresolved until the district court answered the issues left open with the remand. However, we need not address whether the clock started again upon receipt of the first mandate because we believe K.S.A. 2020 Supp. 22-3402(g) controls the results of this case.

*Time subsequently charged to the State*

The district court held Anderson's statutory speedy trial rights were not violated. K.S.A. 2020 Supp. 22-3402(g)'s application to this case was not raised by the State, but it was addressed by Anderson. K.S.A. 2020 Supp. 22-3402(g) provides:

"If a defendant, or a defendant's attorney in consultation with the defendant, requests a delay and such delay is granted, the delay shall be charged to the defendant regardless of the reasons for making the request, unless there is prosecutorial [error] related to such delay. If a delay is initially attributed to the defendant, but is subsequently charged to the state for any reason, such delay shall not be considered against the state under subsections (a), (b) or (c) and shall not be used as a ground for dismissing a case or for reversing a conviction unless not considering such delay would result in a violation of the constitutional right to a speedy trial or there is prosecutorial [error] related to such delay."

There is no evidence of prosecutorial error, nor does Anderson make such argument on appeal. The district court determined Anderson's motion to arrest judgment was not valid because the State brought Anderson to trial within the time limits allowed. Anderson requested the delay by filing his motion to suppress evidence, and the district court necessarily attributed the reasonable time to resolve it to Anderson when it denied

15

his motion to arrest judgment. If we were to now charge the time at issue to the State, the time would not be considered against the State under K.S.A. 2020 Supp. 22-3402(g) and would not be grounds to grant Anderson's motion to arrest judgment.

## II.    THE NEWLY DISCOVERED EVIDENCE WAS INSUFFICIENT TO SUPPORT GRANTING A NEW TRIAL.

Anderson's counsel received an e-mail after trial, but before sentencing, suggesting Anderson did not commit the robbery and did not have access to the alleged getaway vehicle on the day of the incident. The e-mail ultimately led to an arrest report, indicating Mahan and Buckley were arrested the day after the robbery. Anderson argues Mahan was arrested in the alleged getaway vehicle the day after the robbery and Mahan was the same race, height, and weight as Anderson. Anderson requests that we reverse and remand to the district court for a new trial because this newly discovered evidence was material and would raise reasonable doubt as to whether he was guilty of committing the Loan Max robbery.

The State responds the e-mail defense counsel received was vague and suggested the "true robber" was Hayes, an individual the jury heard testimony about at trial. The State specifically argues Mahan's traffic stop, which occurred due to an expired license plate, involved a different vehicle than the alleged getaway vehicle from the robbery the day before. The arrest report revealed Mahan was the same race as Anderson, but Mahan was not the same height and weight as Anderson.

"The court on motion of a defendant may grant a new trial to the defendant if required in the interest of justice." K.S.A. 2020 Supp. 22-3501(1). We review the district court's decision on a motion for new trial based on newly discovered evidence for an abuse of discretion. A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on

16

an error of fact. *State v. Pruitt*, 310 Kan. 952, 972, 453 P.3d 313 (2019). Anderson bears the burden of showing such abuse of discretion. See *State v. Laurel*, 299 Kan. 668, 676, 325 P.3d 1154 (2014).

For a criminal defendant to establish the right to a new trial based on newly discovered evidence, he or she must establish: "(1) that the newly proffered evidence could not have been produced at trial with reasonable diligence; and (2) that the newly discovered evidence is of such materiality that it would be likely to produce a different result upon retrial." *State v. Ashley*, 306 Kan. 642, 650, 396 P.3d 92 (2017). The district court must determine the credibility of the newly proffered evidence to determine whether the new evidence is material. We will not reassess the district court's credibility determination. 306 Kan. at 650.

Here, the issue is whether the newly discovered evidence—the e-mail tied together with Buckley and Mahan's arrest report—was so material as to be likely to produce a different result upon retrial. The district court determined Anderson failed to meet his burden to show the newly proffered evidence was of such materiality that it would produce a different result upon retrial. The district court explained, though there may have been some material connection with the new evidence, the jury heard the evidence and the eyewitness identification evidence from the victim, who was confronted in close range during daylight, and identified the defendant. The district court had the opportunity to determine the credibility of the e-mail defense counsel received, claiming to identify Hayes as the "true robber." The district court found the evidence was not material as to warrant a new trial because the jury also heard testimony suggesting another individual robbed the Loan Max. The motion for a new trial based on the newly discovered evidence was denied.

Anderson quickly shifted his focus away from Hayes and suggested, based on a newly discovered arrest report, the robber was actually Mahan. Anderson explained in his

17

brief: "A Department of Corrections report revealed that Mahan is the same height and weight as Mr. Anderson." This appears to be a clear misstatement of the facts. The DOC printout showed Mahan was 5'7" tall and weighed 204 pounds. The victim testified Anderson was 6'1" or 6'2" tall and weighed 195-200 pounds. Anderson's arrest records reflect he is 6'1" and weighed 220 pounds. Mahan's jail intake form differed from the DOC printout but confirmed he was not the same height or weight as Anderson as he stood 5'7" tall and weighed 180 pounds.

The police report from the Hutchinson Police Department indicated a Saturn L200—not a Saturn Ion—was pulled over in the traffic stop. The driver, Mahan, was arrested for driving while suspended and an expired tag. Mahan stated the vehicle was not his, and the owner of the vehicle was not identified in the record. Further, the police report regarding Mahan appears to be unrelated to the robbery.

The jury heard eyewitness testimony from the victim regarding the appearance and characteristics of the robber that matched Anderson. The jury also heard testimony about Hayes' characteristics and still found Anderson guilty beyond a reasonable doubt.

Anderson has failed to show the district court's denial of his motion for a new trial in light of the purported new evidence was arbitrary, fanciful, or unreasonable. Generally, courts do not favor new trials on the grounds of newly discovered evidence and motions requesting such are viewed with great caution. *State v. Smith*, 39 Kan. App. 2d 64, 67, 176 P.3d 997 (2008). The district court's decision was reasonable and within its sound discretion. Even if reasonable persons could disagree as to the propriety of the district court's decision, it is not an abuse of discretion. *State v. Ballou*, 310 Kan. 591, 616, 448 P.3d 479 (2019).

III.    THERE WAS NO *BRADY* VIOLATION.

Anderson next argues the State deprived him of access to exculpatory evidence by failing to turn over a police report connected to the Loan Max robbery. Anderson specifically claims the undisclosed police report revealed law enforcement arrested Mahan in the alleged getaway vehicle one day after the robbery and such evidence would create reasonable doubt as to whether Anderson committed the crime. The State admits it did not initially provide the police report to Anderson but contends the report was not related to the Loan Max robbery. The State further claims Anderson failed to show such evidence was material because the victim from the Loan Max robbery, along with other witnesses who viewed video surveillance, provided eyewitness identification of Anderson.

The State cannot withhold favorable evidence to an accused "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. "[A] *Brady* violation is reviewed de novo with deference to a trial court's findings of fact, but the trial court's denial of the defendant's motion for new trial is reviewed under an abuse of discretion standard." *State v. Warrior*, 294 Kan. 484, 510, 277 P.3d 1111 (2012).

Law enforcement's knowledge of evidence is imputed to the State. A *Brady* violation can occur when a prosecutor withholds material evidence that is known to law enforcement but not known to the prosecutor. *State v. Francis*, 282 Kan. 120, 150, 145 P.3d 48 (2006). There are three elements of a *Brady* violation:  "(1) '"The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching"'; (2) '"that evidence must have been suppressed by the State, either willfully or inadvertently"'; and (3) the evidence must be material so as to establish prejudice. [Citations omitted.]" *Warrior*, 294 Kan. at 506. If there is a reasonable probability the

19

outcome of the proceeding would differ had the evidence been disclosed, the evidence is considered material. 294 Kan. at 507.

Anderson failed to establish the evidence at issue—the Hutchinson Police Report in Case No. 2015-11193—was materially favorable to him. The report referenced a different model Saturn vehicle that was pulled over in a traffic stop the day after the robbery. Though the driver of the vehicle, Mahan, told the arresting officers the vehicle was not his, the record lacks evidence suggesting who owned the vehicle. Anderson argues the vehicle was the same Saturn Ion from the Loan Max robbery, but Mahan's arrest report reflects the vehicle he was in was a 2002 Saturn L200, not a Saturn Ion. The record also lacks evidence connecting the Saturn L200 to the owner of the Saturn Ion.

Anderson alleged Mahan was the same height and weight as Anderson, but the jail intake form disproves Anderson's contention. In fact, Anderson provided the district court with a DOC printout of Mahan and alleged the printout showed Mahan was the same height and weight as Anderson. This, again, is a misstatement of the facts. The DOC printout showed Mahan was much shorter than Anderson, standing at 5'7" tall and weighing 204 pounds. The jail intake form from Mahan's arrest confirmed he was much shorter than Anderson but did show a slight variation from the DOC printout. The jail intake form showed Mahan standing at 5'8" tall and weighing 180 pounds. Anderson was 29 years old, and Mahan was 33 years old at the time of the Loan Max robbery. The eyewitness victim believed the robber was around 25 years old. The only common characteristics between Anderson and Mahan appear to be their race and gender.

The district court explained the jury heard testimony from the victim who witnessed the robbery firsthand and testified to the height, weight, and characteristics of the robber. The jury also heard testimony about other suspects and still found Anderson guilty beyond a reasonable doubt. It is undisputed the State did not provide Anderson with the police report from Mahan's arrest. The district court stated there may have been

some material connection, but the jury heard evidence about different suspects as well as evidence about the Saturn vehicle. Mahan's traffic stop did not appear to be related to the Loan Max robbery as the Saturn vehicle used as the getaway car (a Saturn Ion) for the robbery was a different car than the Saturn L200 Mahan was driving when he was pulled over the following day.

Anderson has not established the district court erred in determining a *Brady* violation did not occur. Anderson failed to show the police report the State allegedly withheld was material to the Loan Max robbery and would have produced a different result at trial had the jury heard such evidence. He cannot establish a reasonable probability the outcome of his trial would differ had the police report been disclosed. Anderson also failed to establish the district court's denial of his motion for a new trial in light of the alleged *Brady* violation was an abuse of discretion. The district court's decision appears reasonable and within its sound discretion to deny Anderson's motion for a new trial based on an alleged *Brady* violation. Even if reasonable persons could disagree as to the propriety of the district court's decision, it is not an abuse of discretion. *Ballou*, 310 Kan. at 616.

Affirmed.